John H. Gomez (SBN 171485)
john@gomeztrialattorneys.com
Jessica T. Sizemore (SBN 280000)
jessica@gomeztrialattorneys.com
Kayla Lynk (SBN 317599)
klynk@thegomezfirm.com
**GOMEZ TRIAL ATTORNEYS**
655 W Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 237-3490/Facsimile: (619) 237-3496

Matthew T. Poelstra (SBN 231246)
mpoelstra@gbflawyers.com
**GREEN BRYANT & FRENCH, LLP**
402 West Broadway, Suite 1950,
San Diego, CA 92101
Telephone: (619) 239-7900/Facsimile: (619) 239-7800

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN VINCENT, an individual; JOSEPH VINCENT, an individual; CALEB HART, a minor, by and through his guardian ad litem, DAVID BELL; WESLEY VINCENT, a minor, by and through his guardian ad litem, DAVID BELL; ZACHARY VINCENT, a minor, by and through his guardian ad litem, DAVID BELL,<br><br>    Plaintiff,<br><br>  v.<br><br>SAN DIEGO FAMILY HOUSING, LLC, a California Limited Liability Company; LINCOLN MILITARY PROPERTY MANAGEMENT LP, a Delaware Limited Partnership; and DOES 1 to 50, inclusive,<br><br>    Defendants. | Case No. 3:20-cv-01794-LAB-DEB<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>1. Negligence;<br>2. Nuisance;<br>3. Constructive (Wrongful) Eviction;<br>4. Negligent Misrepresentation;<br>5. Negligent Infliction of Emotional Distress;<br>6. Breach of Rental Agreement;<br>7. Breach of Implied Warranty Of Habitability;<br>8. Breach of Implied Covenant Of Quiet Use and Enjoyment;<br>9. Rent Abatement;<br>10. Negligence Against Contractor Working on The Premises<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge:  Hon. Larry Alan Burns<br>Magistrate: Hon. Daniel E. Butcher |

## THE PARTIES

1.      Plaintiff ERIN VINCENT is an individual and at all times mentioned in this complaint was, a resident of San Diego County, California, and at all times mentioned in this Complaint resided at the Subject Property located at 10270 Taussig Court, San Diego, California, 92124, located in the Santo Terrace community ("Subject Property").

2.      Plaintiff JOSEPH VINCENT is an individual and at all times mentioned in this complaint was, a resident of San Diego County, California, and at all times mentioned in this Complaint resided at the Subject Property located at 10270 Taussig Court, San Diego, California, 92124, located in the Santo Terrace community.

3.      Plaintiff CALEB HART, a minor, by and through his guardian ad litem, ERIN VINCENT, is an individual and at all times mentioned in this complaint was, a resident of San Diego County, California, and at all times mentioned in this Complaint resided at the Subject Property located at 10270 Taussig Court, San Diego, California, 92124, located in the Santo Terrace community.

4.      Plaintiff WESLEY VINCENT, a minor, by and through his guardian ad litem, ERIN VINCENT, is an individual and at all times mentioned in this complaint was, a resident of San Diego County, California, and at all times mentioned in this Complaint resided at the Subject Property located at 10270 Taussig Court, San Diego, California, 92124, located in the Santo Terrace community.

5.      Plaintiff ZACHARY VINCENT, a minor, by and through his guardian ad litem, ERIN VINCENT, is an individual and at all times mentioned in this complaint was, a resident of San Diego County, California, and at all times mentioned in this Complaint resided at the Subject Property located at 10270 Taussig Court, San Diego, California, 92124, located in the Santo Terrace community.

6.      Plaintiffs are informed and believe and thereon allege that Defendant SAN DIEGO FAMILY HOUSING, LLC, a California Limited Liability Company, (hereinafter "SD FAMILY HOUSING"), at all relevant times herein mentioned, was a

limited liability company organized and existing under the laws of the State of California, and was registered and authorized to do business in the State of California, and was doing business in the County of San Diego, State of California, and participated in the ownership, management, leasing, maintenance, and/or attempted and negligent repair of the rented Subject Property mentioned in this Complaint. Plaintiffs are informed and believe, and thereon allege, that at all relevant times, and/or portions thereof, Defendant SD FAMILY HOUSING was the owner, landlord and/or lessor of the subject premises rented to Plaintiffs.

7.      Plaintiffs are informed and believe and thereon allege that Defendant LINCOLN MILITARY PROPERTY MANAGEMENT LP, a Delaware Limited Partnership, (hereinafter "LINCOLN PROPERTY MANAGEMENT"), at all relevant times herein mentioned, was a limited partnership organized and existing under the laws of the State of Delaware, and transacted significant business in and had minimum contacts with the State of California and the County of San Diego, City of San Diego, as the owner and/or landlord and/or lessor and/or property management company for the Subject Property located in San Diego, California, and at all relevant times was acting as the authorized agent of Defendant SD FAMILY HOUSING. Plaintiffs are informed and believe, and thereon allege, that at all relevant times, and/or portions thereof, Defendant LINCOLN PROPERTY MANAGEMENT was the owner and/or landlord and/or lessor of the subject premises rented to Plaintiffs and/or acted as such, as well as the property manager for the Subject Property.

8.      Plaintiffs are informed and believe that Colt Services, Inc. dba Stanley Steemer of San Diego, CA ("STANLEY STEEMER") conducts operations in the Western United States, including San Diego County, California where the acts and omissions alleged in this Complaint occurred. Upon information and belief STANLEY STEEMER bears the same responsibility for the wrongful acts alleged herein as do SD FAMILY HOUSING and together with LINCOLN PROPERY MANAGEMENT, may collectively be referred to herein as Defendants. Upon information and belief, defendant

STANLEY STEEMER is, and at all times relevant hereto has been, authorized to, and does, conduct substantial business in the State of California and within the County of San Diego.

9.      Plaintiffs are informed and believe that Apex Companies, LLC ("APEX") conducts operations in the Western United States, including San Diego County, California where the acts and omissions alleged in this Complaint occurred. Upon information and belief APEX bears the same responsibility for the wrongful acts alleged herein as do SD FAMILY HOUSING and together with LINCOLN PROPERY MANAGEMENT, may collectively be referred to herein as Defendants. Upon information and belief, defendant APEX is, and at all times relevant hereto has been, authorized to, and does, conduct substantial business in the State of California and within the County of San Diego.

10.      Plaintiffs are informed and believe that 3D Environmental Inc. ("3D ENVIRONMENTAL") conducts operations in the Western United States, including San Diego County, California where the acts and omissions alleged in this Complaint occurred. Upon information and belief STANLEY STEEMER bears the same responsibility for the wrongful acts alleged herein as do SD FAMILY HOUSING and together with LINCOLN PROPERY MANAGEMENT, may collectively be referred to herein as Defendants. Upon information and belief, defendant 3D ENVIRONMENTAL is, and at all times relevant hereto has been, authorized to, and does, conduct substantial business in the State of California and within the County of San Diego.

11.      Plaintiffs do not know the true names of defendants DOES 1 through 50, inclusive, and therefore sue them by those fictitious names. Plaintiffs are informed and believe, and on the basis of that information and belief allege, that each of those defendants was in some manner legally and proximately responsible for the events and happenings alleged in this complaint and for plaintiffs' injuries and damages.

12.      Plaintiffs are informed and believe, and on the basis of that information and belief allege, that at all times mentioned in this complaint, Defendants were the agents

and employees of their co-defendants, and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment.

13.    Plaintiffs are informed and believe and thereon allege that at all times relevant to this complaint, each defendant designated herein as a DOE was qualified to and did conduct business and is doing business in the State of California.

14.    Plaintiff is informed and believes and thereupon alleges that each Defendant, and each Defendants sued as DOE Defendants, was acting for itself or as an agent, servant, partner, employee, or on behalf of a co-Defendant, in doing the things mentioned and alleged in this Complaint and was acting in the scope of his or her authority as such an agent, servant, partner, employee, or co-Defendants or otherwise with the permission and consent of his or her co-Defendants.

15.    The lease agreement mentioned in this Complaint was entered into and to be performed in the City of San Diego, County of San Diego, State of California, and the Plaintiffs and Defendants at all times relevant herein reside and/or resided and/or are located and performed significant business in the City of San Diego, County of San Diego, State of California.

16.    As used herein, the term "Defendants" shall mean to refer, unless otherwise specified, collectively to Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, STANLEY STEEMER, APEX, and 3D ENVIRONMENTAL.

**FACTUAL ALLEGATIONS**

17.    Plaintiffs lived at and occupied the Subject Property as tenants during the period beginning on or around July 17, 2018 through on or around April 29, 2020.

18.    Plaintiffs are former residents and tenants of the Subject Property under a written lease agreement executed by Defendants as owners/agents of the Subject Property.  The lease was signed on or about July 16, 2018.  Under the terms of the rental agreement, Plaintiffs paid rent, a security deposit, and other fees and costs.  A copy of the rental agreement between Plaintiffs and Defendants is attached as Exhibit 1 hereto.

19.    The rental agreement expressly acknowledges that the residential use of the

Gomez Trial
Attorneys

PLAINTIFFS' FIRST AMENDED COMPLAINT

1   Subject Property was for Plaintiffs identified herein.

2   20.   Throughout their tenancy at the Subject Property, Plaintiffs discovered

3   multiple defects and problems with the Subject Property, which materially affected its

4   habitability, making the Subject Property untenantable and substandard under applicable

5   California law and causing Plaintiffs to become ill and suffer physical injury, and

6   ultimately forcing Plaintiffs to vacate the Subject Property, including but not limited to

7   the following:

8   (a) Roof defects and damages;

9   (b) Floor defects and damages;

10   (c) Flooding at the common wall with the living room and kitchen;

11   (d) Elevated levels of moisture inside home;

12   (e) Dampness of habitable rooms;

13   (f) Water/moisture damage and stains inside the home;

14   (g) Moisture damaged building materials;

15   (h) Microbial growth and contamination inside home;

16   (i) Vents contaminated with microbial spores;

17   (j) Visible mold growth inside the home and in and around the HVAC unit;

18   (k) Odor throughout the interior living spaces of the Subject Property;

19   (l) Other additional defects and problems at the Subject Property not yet

20       known to Plaintiffs but which Plaintiffs are informed and believe will be

21       revealed throughout the course of discovery in this action.

22   21.   Plaintiffs repeatedly notified Defendants of these multiple defects in a

23   timely manner; however, Defendants took no action to properly repair them and/or

24   improperly attempted repairs resulting in further contamination, adding to the

25   uninhabitability of the Subject Property and making it untenantable and substandard.

26   22.   Defendants have had ample opportunity to correct the substandard and

27   dangerous conditions of the Subject Property, but despite their knowledge of the

28   conditions and the opportunity to correct them, Defendants failed and refused to bring

Gomez Trial
Attorneys

-6-                                              3:20-c-v-01794-LAB-DEB

PLAINTIFFS' FIRST AMENDED COMPLAINT

the Subject Property into compliance with applicable building, health, safety codes, regulations, ordinances and laws. The relevant laws which Defendants have violated and continue to violate include the habitability laws and standards contained in the California Civil Code and the California Health and Safety Code. Defendant's flouting of the law and gross violations of building, health and safety codes, ordinances, regulations and laws have rendered the Subject Property unsafe, unsanitary, unhealthy and unfit for human habitation.

23.     In or around their move in date of July 17, 2018, Plaintiffs discovered a musty odor throughout the interior living spaces of the Subject Property, along with a soft and spongy floor within the Subject Property.

24.     In or around late July – August 2018, Plaintiffs began to notice they felt ill and suspected for the first time in their tenancy that it may be caused as a result of residing in the Subject Property.

25.     In or around October 2018, Plaintiffs discovered microbial growth for the first time inside the interior living spaces of the Subject Property.

26.     Throughout their tenancy, Plaintiffs repeatedly notified Defendants of the defective conditions on the Subject Property but defendants failed to fully and properly investigate and/or allowed the defective conditions to remain unrepaired.

27.     Due to the substandard and untenantable conditions at the Subject Property, Plaintiffs were forced to vacate the Subject Property on or around April 29, 2020.

28.     As a direct and proximate result of Defendants' negligence and wrongful conduct, resulting in an uninhabitable, substandard and contaminated Subject Property and indoor environment, as alleged herein, Plaintiffs were injured in health, strength and activity, sustaining injury to their bodies, and among others, sustained the following health problems and personal injuries including, but not limited to the following: **ERIN VINCENT**: respiratory problems, shortness of breath, chest tightness, headaches, runny nose, stuffy nose, lethargy and tiredness, itchy skin, dry skin, sore and dry throat; itchy throat; **JOSEPH VINCENT:** respiratory problems, sore throat, dry throat; **CALEB**

**HART:** respiratory problems, respiratory distress, respiratory infection, shortness of breath, sinus congestion, runny nose, stuffy nose, sore throat, dry throat, itchy throat; **WESLEY VINCENT:**  runny nose, bloody nose, respiratory problems, shortness of breath, sore throat, dry throat; **ZACHARY VINCENT:** respiratory problems, dry skin, itchy skin, red skin, irritated skin, sore throat, dry throat; all of which injuries have caused and continue to cause Plaintiffs great physical, and nervous pain and suffering and loss of quality of life and life opportunities.   In addition, Plaintiffs have been, and continue to be, subject to natural distress, arising from having these physical injuries which are damaging their health and destroying their quality of life in amount not ascertainable at this time but which will be proven at the time of trial.

29.    At all times mentioned herein, as a consequence of the conduct and omissions by Defendants as alleged herein, the Subject Property made Plaintiffs sick and has not been habitable or tenantable, has had no reasonable rental value, and remains uninhabitable and untenantable and without rental value.

30.    At all times mentioned in this complaint, Plaintiffs were ignorant of the dangers, hazards, and risks involved in living, residing in, or otherwise being at the Subject Property, until late July – August 2018, and through the exercise of reasonable diligence, could not have become aware of these risks.  While Plaintiffs started to feel ill in the weeks after their move in date of July 17, 2018, Plaintiffs discovered microbial growth for the first time inside the interior living spaces of the Subject Property in or around October 2018.

31.    The conditions complained of herein were not caused by any act or omission of any Plaintiff.  In the weeks following their July 17, 2018 move in date, Plaintiffs started to feel ill.  In or around October 2018, Plaintiffs discovered microbial growth for the first time inside the interior living spaces of the Subject Property.  This was the earliest that Plaintiffs could have first became aware of the injuries and damages complained of in this complaint. Prior to that date, Plaintiffs did not know, nor through the exercise of reasonable diligence could have known, of these injuries and damages.

**CAUSES OF ACTION**

**I.**

**FIRST CAUSE OF ACTION**

**Negligence**

**(By All Plaintiffs Against All Defendants)**

32.    Plaintiffs incorporate herein by reference each and every previous and subsequent allegations as though fully set forth herein.

33.    At all times mentioned in this complaint, Defendants were engaged in the business of owning, leasing, renting, operating, providing, supervising, maintaining, managing, constructing, inspecting, and/or repairing the Subject Property before, during and after Plaintiffs' tenancy.

34.    At all times relevant herein, Defendants owed a non-delegable duty of care to Plaintiffs under the common law and as specified in Civil Code 1714 to exercise due care in the ownership, leasing, operating, maintenance, construction, and management of the Subject Property to avoid foreseeable injury to others.  Such due care required Defendants to comply with all building, housing, plumbing, electrical, health and safety codes, civil codes, and other ordinances, statutes, regulations and laws regarding the maintenance and operation of residential rental housing.

35.    Under the provisions of Civil Code Section 1941, 1941.1, et seq., Health and Safety Codes, and applicable building, plumbing, electrical and housing Codes, Defendants and Does 1-50 were required to put the rented Subject Property in a habitable condition fit for human occupation before renting and to keep and maintain the Subject Property in such condition and to repair all subsequent dilapidations that rendered the Subject Property untenantable.

36.    At all times mentioned in this Complaint, Defendants had a duty to Plaintiffs to properly and safely own, lease, rent, operate, provide, supervise, maintain, manage, construct, inspect, and repair the Subject Property so as to make it habitable, safe, and hazard-free, enabling tenants, including Plaintiffs, to quietly enjoy the Subject

1  Property.

2      37.    At all times mentioned in this Complaint, Defendants had a duty to

3  Plaintiffs to use ordinary care for the preservation of the Subject Property and to

4  maintain it in good repair, to repair all deteriorations or injuries to the Subject Property

5  caused by their want of ordinary care and to avoid intentional or reckless damage,

6  destruction, demolition, or deterioration to the Subject Property, its fixtures,

7  components, systems and/or structures.

8      38.    At all times mentioned in this Complaint, Defendants owed Plaintiffs a

9  legal duty to exercise reasonable care to ensure that such space was safe to occupy, and

10 that Plaintiffs' occupancy of such space would not result in exposure to anything that

11 would negatively affect Plaintiffs' health, including but not limited to excess moisture,

12 water damage, and/or microbial contamination.

13     39.    At all times mentioned in this complaint, Defendants had a duty to

14 Plaintiffs to properly and safely repair, construct, demolish, remove, refurbish, remodel,

15 restore, remediate, and clean the Subject Property and its building materials, so as to

16 maintain the Subject Property in a habitable, safe, and hazard-free condition.

17     40.    Plaintiffs are informed and believe and on that basis allege that Defendants

18 knew or should have known at all times relevant to this Complaint that the Subject

19 Property suffered from water damage, moisture damage, excessive moisture and

20 humidity, and microbial contamination, rendering the Subject Property substandard and

21 untenantable as alleged herein.

22     41.    At the time Defendants and Does 1-30 rented the Subject Property to

23 Plaintiffs, and thereafter, Defendants and Does 1-30 so negligently owned, leased,

24 rented, operated, managed, maintained, and repaired the Subject Property so as to cause

25 it to be uninhabitable and unfit, unhealthy, and unsafe for human occupation in that the

26 Subject Property suffered from design and construction defects and deficiencies,

27 causing and allowing water and moisture intrusion into the living spaces of the Subject

28 Property, causing and allowing the Subject Property to become contaminated with

Gomez Trial
Attorneys

PLAINTIFFS' FIRST AMENDED COMPLAINT

excess moisture and humidity and microbial growth, and otherwise failed to comply with those applicable housing, plumbing and building codes, Civil Codes, Health and Safety Codes, Federal and State Regulation concerning residential rental properties, including but not limited to Sections 1714 and 1941 et seq., which materially affect the health and safety of the Plaintiffs as tenants and their invited guests.

42.   Defendants negligently failed to exercise the due care owed to Plaintiffs in owning, leasing, maintaining, operating, and repairing and overseeing the Subject Property, as alleged herein, and furthermore have caused and/or failed to remediate damage and deterioration to the Subject Property, components, systems, materials, structures, and fixtures therein, among other items as already alleged herein.

43.   Defendants breached their legal duty to Plaintiffs by negligently, improperly, recklessly and in a non-controlled manner, exposing Plaintiffs to excessive moisture, dampness, and humidity, as well as microbial contamination, while Plaintiffs were living in the Subject Property, as alleged herein.  Such breach was a legal and proximate cause of damage to Plaintiffs as alleged herein.

44.   Defendants further breached their legal duties to Plaintiffs because they improperly, negligently, carelessly and in a reckless disregard for Plaintiffs' safety and rights, disturbed and/or caused to be disturbed microbial growth and contamination at the Subject Property, in such a manner so as to expose Plaintiffs to such contamination and cause injury to Plaintiffs and did so by failing to exercise due care.

45.   Defendants further breached their duties of care to Plaintiffs and negligently caused Plaintiffs to be injured by Defendants' tortious acts, omissions and conduct, by the following conduct:

(a)   The failure to provide Plaintiffs with a reasonably safe and habitable premises in which to live;

(b)   The failure to take reasonable general precautions to prevent injury to Plaintiffs;

(c)   The failure to provide, recommend, or require containment,

protective clothing, hoods, respirators, ventilators or other apparatus for the protection of plaintiffs;

(d)     By negligently and recklessly renting and maintaining the premises as set forth above and as defined by, but not limited to, Civil Code 1714 et seq.; negligently and recklessly violating the applicable building, health and safety codes, ordinances, statutes and laws; negligently failing to correct such unlawful conditions so as to make he premises fit for human habitation;

(e)     The failure to cure defects and deficiencies in the Subject Property which were known or should have been known, which led to increased moisture, odors, and pervasive microbial growth and contamination in and around the interior living spaces of the Subject Property;

(f)     The failure to comply with all applicable building, health & safety, housing, plumbing, and civil codes, as well as other applicable laws, codes, regulations, and ordinances for rental properties concerning the tenants' health and safety;

(g)     The failure to consult, read and utilize current literature regarding microbial contamination, indoor air quality and "sick building syndrome" and other materials, including those produced by the EPA and federal and state agencies for landlords, residential building owners and managers.  Defendants' failure to do so caused harm to Plaintiffs; and

(h)     The failure to conduct adequate maintenance, repair and inspection, including failing to remedy known building code violations such as leaks, excess moisture, and microbial contamination, and others as alleged herein.

40.   The active negligence and failures to abide by applicable standards of care by Defendants constitutes negligence per se because of violations of applicable statutes, codes, and ordinances which led to injury of foreseeable parties intended to be protected by such codes, ordinances and statutes, including Plaintiffs.

41.   As a direct and proximate result of Defendants' and Does 1-50 negligence as alleged above, the Subject Property was in disrepair and not maintained, so as to be

uninhabitable and unfit for human occupation in that, among other things, Defendants and Does 1-50, and each of them, carelessly and negligently failed to investigate, remediate, and maintain in good repair the building components, and as a proximate result caused and allowed to exist water/moisture intrusion into living spaces causing microbial growth and indoor air contamination.  None of these conditions were known to Plaintiff at the time they moved into the premises.

42.  As a direct and proximate result of Defendants' breaches as alleged herein, Plaintiffs sustained injury to their health and strength and to their bodies as alleged herein, have suffered severe resulting distress, anxiety, worry, and frustration, and incurred medical expenses in the treatment thereof, all in an amount to be proven at trial.

43.  As a direct and proximate result of the above-described conduct and omissions of Defendants, Plaintiffs have suffered damage to their respiratory systems, conscious pain, suffering and emotional distress, in a sum to be determined according to proof at trial.

44.  As a further direct and proximate result of the tortious acts, omissions and conduct of Defendants, Plaintiffs have sustained, and/or are certain in the future to sustain, losses, injuries and damages as follows:

(a)     Expenditures for past, present and future medical services and other curative treatment and items in connection with the care of Plaintiffs' injuries, including costs of insurance, in a sum to be determined according to proof at trial; and

(b)     Expenditures for the replacement or cleaning of all Plaintiffs' personal property and belongings within the Subject Property.

45. As a further direct and proximate result of Defendants' negligent and wrongful conduct and omissions as alleged herein, Plaintiffs have suffered mental stress, emotional distress, discomfort, annoyance, anxiety, physical injuries, illness, pain and suffering, property damage and lost income; all to their general and specific damage in an amount to be determined at trial but which amount is within the jurisdictional

1   requirements of this Court.

2       46.  As a further proximate result of Defendants' and Does 1-30's negligence,

3   Plaintiffs suffered property damage and economic loss including, but not limited to, loss

4   of use of the Subject Property; loss of use of personal property items; moving expenses;

5   lost rental payments; alternative housing costs; cleaning expenses and loss of income;

6   out of pocket costs and other damages; all to their further damage in an amount to be

7   proven at trial.

8       47.  It is further alleged that Defendants and Does 1-30 failed to properly

9   investigate, repair, remediate and restore the Subject Property, to place the Subject

10  Property into a habitable, safe building condition and Plaintiffs relied upon Defendants'

11  implied representations of habitability to their respective detriment, injury, and damage.

12      48.  Plaintiffs are entitled to recover their attorneys' fees under the subject lease

13  agreement entered into between the parties.  Plaintiffs have hired a law office to

14  prosecute their claims and are entitled to their attorneys' fees and costs after trial in this

15  matter.

## II.

## SECOND CAUSE OF ACTION

### Nuisance

### (By All Plaintiffs Against all Defendants)

20      49.  Plaintiffs incorporate herein by reference each and every previous and

21  subsequent allegations as though fully set forth herein.

22      50.  The defective and dangerous conditions of the Subject Property as alleged in

23  this Complaint constitute a nuisance within the meaning of Civil Code Section 3479 and

24  Code of Civil Procedure Section 731 in that they deprived Plaintiffs of the safe, healthy,

25  and comfortable use of the Subject Property and in that said conditions were injurious to

26  the health and welfare of Plaintiffs and/or Plaintiffs' property, and that the conditions

27  and/or injuries created a substantial and unreasonable interference with Plaintiffs'

28  peaceful and quiet enjoyment of their home.

Gomez Trial
Attorneys

PLAINTIFFS' FIRST AMENDED COMPLAINT

51. Plaintiffs are informed and believe, and based thereon allege, that Defendants, and each of them, by their acts, conduct, failure to act, and/or omissions, created, maintained, exacerbated, and concealed a nuisance and did not take any reasonable steps to immediately abate said nuisance, although requested to do so.

52. As a proximate result of Defendants' and Does 1-30's maintenance of the nuisance, Plaintiffs suffered discomfort and annoyance, all to their general damage, in an amount to be proven at trial.

53. As a further proximate result of Defendants' and Does 1-30's conduct, Plaintiffs suffered property damage and economic loss including, but not limited to, loss of use of the Subject Property; loss of use of personal property items; moving expenses; lost rental payments; alternative housing costs; cleaning expenses and loss of income; out of pocket costs and other damages; all to their further damage in an amount to be proven at trial.

54. In maintaining the nuisance, Defendants and Does 1-30 acted with full knowledge of the foreseeable consequences thereof and of the damage being caused to Plaintiffs.  Despite this knowledge, Defendants and Does 1-30 failed to abate the nuisance by repairing the uninhabitable, defective and dangerous conditions of the subject property or causing them to be repaired.  As a proximate result of Defendants' and Does 1-30's conduct, Plaintiffs have been, and continue to be, subject to physical injuries, including but not limited to those alleged herein, which are seriously damaging their health and destroying their quality of life in amount not ascertainable at this time but which will be proven at the time of trial.

55. As a direct and proximate result of the above-described conduct and omissions of Defendants, Plaintiffs have suffered damage to their respiratory systems, mental anguish, conscious pain, suffering and emotional distress, in a sum to be determined according to proof at trial.

56. As a further direct and proximate result of Defendants' conduct, as alleged herein, Plaintiffs have suffered mental stress, emotional distress, discomfort, annoyance,

Gomez Trial
Attorneys

PLAINTIFFS' FIRST AMENDED COMPLAINT

anxiety, physical injuries, illness, pain and suffering, property damage and lost income; all to their general and specific damage in an amount to be determined at trial but which amount is within the jurisdictional requirements of this Court.

57.    Plaintiffs are entitled to recover their attorneys' fees under the subject lease agreement entered into between the parties.  Plaintiffs have hired a law office to prosecute their claims and are entitled to their attorneys' fees and costs after trial in this matter.

## III.

### THIRD CAUSE OF ACTION

### Constructive (Wrongful) Eviction

### (By All Plaintiffs Against Defendants and DOES 1-10))

58.    Plaintiffs incorporate herein by reference each and every previous and subsequent allegations as though fully set forth herein.

59.    As a proximate result of Defendants' failure to maintain the Subject Property in a habitable and tenantable condition that complied with applicable state, federal and local building and housing codes, laws, and regulations, and Defendants failure to maintain the Subject Property in a condition fit for human occupation, Defendants breached their covenant of the quiet use and enjoyment to Plaintiffs and Plaintiffs were required and forced to vacate the Subject Property and did so on or about April 2020, constituting a constructive and wrongful eviction.

60.    Defendants' constructive eviction of Plaintiffs in April 2020 entitled Plaintiffs to immediately terminate their tenancy and Plaintiffs' obligations under the rental agreement were extinguished, as provided in *Green v. Superior Court* , 10 Cal. 3d 616, 639 (1974).

61.    As a proximate result of Defendants' conduct, as alleged in this Complaint, Plaintiffs suffered pain and physical injury all to their general damage in an amount to be proven at trial.  Plaintiffs have been, and continue to be, subject to physical injuries which are seriously damaging their health and destroying their quality of life in an

1  amount not ascertainable at this time but which will be proven at the time of trial.

2      62.    As a further direct and proximate result of Defendants' actions, Plaintiffs

3  suffered damages including but not limited to mental and emotional distress, costs and

4  expenses to move, loss of income, and other economic and non-economic damages, all

5  to their general damage in an amount to be proven at trial.

6      63.    As a further proximate result of Defendants' conduct and Plaintiffs'

7  resulting pain and physical injuries, as alleged in this Complaint, Plaintiffs were

8  required to and did incur medical and related expenses, all to their further damage.

9      64.    As a direct and proximate result of the above-described conduct and

10  omissions of Defendants, Plaintiffs have suffered damage to their respiratory systems,

11  mental anguish, conscious pain, suffering and emotional distress, in a sum to be

12  determined according to proof at trial.

13      65.    As a further proximate result of Defendants' conduct, Plaintiffs suffered

14  property damage and economic loss including, but not limited to, loss of use of the

15  Subject Property; loss of property damage and economic loss including, but not limited

16  to, loss of use of the Subject Property; loss of use of personal property items; moving

17  expenses; lost rental payments; alternative housing costs; cleaning expenses and loss of

18  income; out of pocket costs and other damages; all to their further damage in an amount

19  to be proven at trial.

20      66.    The actions of Defendants were fraudulent, intentional, willful, retaliatory,

21  and oppressive, and done with a willful, conscious disregard for Plaintiffs' safety and

22  rights, and justify an award of punitive and exemplary damages under California Civil

23  Code § 3294.

24      67.    Plaintiffs are entitled to recover their attorneys' fees under the subject lease

25  agreement entered into between the parties.  Plaintiffs have hired a law office to

26  prosecute their claims and are entitled to their attorneys' fees and costs after trial in this

27  matter.

28  ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**FOURTH CAUSE OF ACTION**

**Negligent Misrepresentation**

**(By All Plaintiffs Against Defendants and DOES 25-35)**

68.   Plaintiffs incorporate herein by reference each and every previous and subsequent allegations as though fully set forth herein.

69.   Defendants DOES 25-35 had a duty to Plaintiffs to assure that any representations affirmatively made to Plaintiffs regarding the Subject Property were true.

70.   Defendants and DOES 25-35 represented to Plaintiffs orally and in writing important and material facts about the Subject Property as true.  Specifically, Defendants and DOES 25-35 represented orally and in writing to Plaintiffs that the Subject Property was safe for Plaintiffs to remain residing in despite Defendants' knowledge that the Subject Property contained excessive moisture and humidity levels, as well as microbial contamination, including elevated levels of harmful indoor air that presented a severe health and safety risk to Plaintiffs and any occupants of the Subject Property.

71.   DOES 25-35 aided, abetted and embraced Defendants misrepresentations of material fact as described herein.

72.   Defendants and DOES 25-35 made representations of material and important facts were not true, as alleged herein.  Specifically, the Subject Property suffered from excessive moisture and humidity levels, as well as microbial contamination that rendered the indoor air harmful to Plaintiffs.

73.   In making the affirmative misrepresentations of material fact as described herein, even if Defendants and DOES 25-35 believed them to be true at the time made, they made such statements and misrepresentations without any reasonable basis for believing them to be true and should have known them to be false.  Defendants and

DOES 25-35 had no reasonable grounds for believing their representations to Plaintiffs were true at the time they made them.

74.   Defendants and DOES 25-35 made the affirmative misrepresentations and statements of material fact about the Subject Property as described herein with the intent to induce Plaintiffs to rely on them and with the intent to induce Plaintiffs to remain residing in the Subject Property and continue to pay monthly rent.

75.   Plaintiffs reasonably and justifiably relied on Defendants and DOES 25-35's misrepresentations and statements of material fact about the Subject Property to their detriment, injury, and damage.

76.   As a direct and proximate result of such negligent misrepresentations of Defendants and DOES 25-35, and Plaintiffs' reliance thereon, Plaintiffs remained residing and occupying the Subject Property, which contained extensive damage and contamination and posed a significant health risk to Plaintiffs that Plaintiffs justifiably believed did not exist based on Defendants' affirmative representations, including but not limited to water leaks, moisture, and microbial contamination from identified and/or unidentified sources.  These conditions and the above-described actions of Defendants and DOES 25-35 subjected Plaintiffs to numerous costs and expenses and caused them to suffer damages, including personal injuries, and other economic and non-economic damages as more fully described herein and in an amount according to proof at trial.

## IV.

## FIFTH CAUSE OF ACTION

## Negligent Infliction of Emotional Distress

## (By All Plaintiffs Against Defendants and DOES 1-30)

77.   Plaintiffs incorporate herein by reference each and every previous and subsequent allegations as though fully set forth herein.

78.   By virtue of their relationship as landlord and tenants, Defendants and Plaintiffs enjoyed a special relationship during the period of Plaintiffs' tenancy at the Subject Property, thus giving rise to a heightened duty of care owed by Defendants to

Plaintiffs.

79.   Defendants knew, or in the exercise of reasonable care should have known, that by failing to properly maintain and repair the Subject Property, which suffered from chronic water and moisture intrusion, excessive moisture and humidity, and microbial contamination, that Plaintiffs would be exposed to harmful levels of microbial contamination, including harmful indoor air quality, as alleged herein.  Defendants further knew, or in the exercise of reasonable care should have known, that Plaintiffs would suffer physical harm and severe emotional distress upon learning of this exposure.

80.   Despite their knowledge that the Subject Property was deficient and substandard as alleged herein, Defendants nevertheless, in a negligent, reckless, unlawful, and careless manner, and in violation of State, and other applicable laws, ordinances and regulations, failed to properly investigate, inspect, test, maintain, repair, and remediate the Subject Property so as to avoid foreseeable harm to Plaintiffs, resulting in excess and chronic moisture, water intrusion, high humidity, and microbial contamination in the indoor living spaces, including the indoor air.  Indeed, Plaintiffs did inhale the air in the Subject Property while microbial contamination existed inside the Subject Property.

81.   As a result of Plaintiffs' exposure to excess moisture levels, dampness, and microbial contamination as described herein, Plaintiffs sought medical evaluations and treatments from their doctor.  They were reasonably concerned and afraid about their health as a result of their exposure to microbial contamination at the Subject Property.

82.   Plaintiffs have sought medical treatment and have suffered severe, substantial and enduring emotional distress, worry, anxiety, loss of sleep, and frustration.

83.   As a direct and proximate result of Defendants' breaches as alleged herein, Plaintiffs sustained injury to their health and strength, have suffered severe, substantial, enduring, serious emotional distress, and have incurred medical expenses in the

treatment thereof all in an amount to be proven at trial.

## VI.

### SIXTH CAUSE OF ACTION

### Breach of Rental Agreement

### (By All Plaintiffs Against Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and DOES 1-10)

84.    Plaintiffs incorporate herein by reference each and every previous and subsequent allegations as though fully set forth herein.

85.    Plaintiffs are informed and believe, and thereon allege, that at all relevant times and/or portions thereof, Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 were owners, landlords, and/or lessors of the Subject Property.

86.    On or about July 17, 2018, Plaintiffs entered into a written rental agreement with Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10.  Under the terms of the rental agreement, Plaintiffs paid rent, a security deposit, and other fees and costs.  A copy of the rental agreement between Plaintiffs and Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 is attached as Exhibit 1 hereto.

87.    The rental agreement expressly acknowledges that the residential use of the Subject Property was for Plaintiffs identified herein.

88.    In exchange for Plaintiffs' monthly rental payment, Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10, as owners, landlords, lessors to the lease with Plaintiffs of the Subject Property, agreed, by implied warranty, to rent a habitable and tenantable premises in good repair to Plaintiffs, in accordance with all applicable California and local laws and building codes; a premises that Plaintiffs could quietly use and enjoy, without exposure to any dangerous, hazardous, or unhealthy conditions that could cause health problems to Plaintiffs and/or their guests, invitees, and licensees.

89.     In addition, Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10, as owners, landlords, lessors to the lease with Plaintiffs, made an implied covenant of quiet use and enjoyment to Plaintiffs.

90.     By renting the Subject Property to Plaintiffs, Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 impliedly warranted to Plaintiffs that such space was safe to inhabit, and that Plaintiffs' occupancy of such space would not result in exposure to harmful, dangerous, or hazardous materials.  Defendants had a contractual and legal duty to provide Plaintiffs with a residential dwelling that was free of harmful, dangerous, and/or hazardous airborne materials such as microbial contamination.

91.     At all times, Plaintiffs fully performed all of their obligations under the rental agreement, except those obligations from which they were excused from performing by law as a result of the Subject Property being uninhabitable and untenantable.

92.     Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 breached the rental agreement with Plaintiffs by at least the following:

(a)     Failing to maintain the Subject Property in safe and good repair, as alleged herein;

(b)     Failing to properly and timely inspect, investigate, test, maintain, repair, remediate the Subject Property so as to render it in compliance with all applicable laws, ordinances, and regulations regarding residential rental buildings, and allowing for dampness of habitable rooms, excess moisture, water damage, and microbial contamination due to deficiencies and defects that Defendants allowed to exist and failed to repair;

(c)     Failing to provide a habitable and tenantable premises as impliedly warranted under the terms of the rental agreement and as mandated by California Civil Code Section 1941 et seq., Uniform Housing Codes, Health and Safety Codes

(including Cal. Health & Safety Code § 17920.3), and other applicable state and local laws and building codes;

(d)     By exposing Plaintiffs to harmful and dangerous levels of microbial contamination. In doing so, Defendants denied Plaintiffs the quiet enjoyment of the Subject Property.

93.     Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 further breached the Rental Agreement and the implied warranty contained therein by failing to maintain the Subject Property in good repair, and refusing to make repairs in response to Plaintiffs' requests.

94.     At the time Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 rented the Subject Property to Plaintiffs, and during Plaintiff's tenancy, the Subject Property was unfit for human occupation in that it substantially failed to comply with those applicable building and housing code standards that materially affect the tenant's health and safety given the Subject Property allowed water/moisture intrusion into areas of the interior living space, causing water/moisture damage and microbial growth.  Such water intrusion is and was a result of a combination of known defective design and construction of the residence and improper and substandard maintenance and management, incomplete and improper investigation into defective and deteriorated building components and improper repair attempts of the Subject Property by Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10, all of which caused and contributed to the microbial growth which in turn has caused and continues to cause personal injuries to Plaintiffs as more specifically alleged in this Complaint.

95.     At the time the Rental Agreement was entered into, and throughout the time Plaintiffs occupied the Subject Property, Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 knowingly caused and permitted hazardous and unhealthy conditions to exist within and about the premises, including, but not limited to (1) lack of effective waterproofing and weather protection;

(2) unhealthy levels of microbial/mycological contamination throughout the residence; (3) water intrusion; and (4) all such other conditions as alleged in this Complaint.

96. At all relevant times, the Subject Property was uninhabitable and unfit for human occupation as alleged herein; the premises' building components failed, all contributing to the water (moisture) intrusion causing microbial/mycological contamination and infestation of the premises, rendering it unsafe for habitation and causing chronic health problems to Plaintiffs.

97. Plaintiffs repeatedly notified Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 of the defective conditions described in this Complaint and requested that Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 repair them, but Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 failed to fully and properly investigate and/or allowed the defective conditions to remain unrepaired.

98. As a result of the water and moisture intrusion, microbial growth, mycological contamination, defective design and construction of the premises, substandard maintenance and management, and other conditions making the premises uninhabitable, as mentioned herein, which Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 allowed to exist, the rental value of the Subject Property that Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 rented to Plaintiffs was $0.00.   The Subject Property as it existed in its defective and dangerous condition had no rental value whatsoever.  As such, Plaintiffs did not receive a habitable, tenantable premises, and thus did not receive what they bargained for under the rental agreement, for which they paid month rent.

99. As a further proximate result of Defendants' SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does' 1-10 breach of contract, including the implied warranty of habitability, Plaintiffs suffered property damage and economic

loss including, but not limited to, loss of use of the Subject Property; loss of use of personal property items; moving expenses; lost rental payments; alternative housing costs; cleaning expenses and loss of income; out of pocket costs and other damages including but not limited to travel costs, food bills, etc., as well as other economic damages as alleged herein, all to their further damage in an amount to be proven at trial.

100.   As a direct and proximate result of Defendants' SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does' 1-10 breaches of the rental agreement, including the implied warranty of habitability, Plaintiffs sustained damage and personal injuries and resulting chronic and general damages, as alleged herein, in the amount in excess of this Court's jurisdiction to be proven at trial.  In addition, Plaintiffs have been, and continue to be, subject to natural distress arising from having these physical injuries which have damaged their health and are destroying their quality of life in amount not ascertainable at this time but which will be proven at the time of trial.  Plaintiffs have experienced natural distress and worry, and loss of peaceful and quiet use of enjoyment of the Subject Property.  All of these injuries and general distress and worry have caused health problems and damages in an amount to be proven at trial.

101.   As a further direct and proximate result of Defendants' SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does' 1-10  breaches as alleged herein, Plaintiffs sustained injury to their health and strength and has suffered severe emotional distress.

102.   As a further direct and proximate result of Defendants' SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does' 1-10 breaches of the rental agreement, including the implied warranty of habitability, Plaintiffs suffered property damage and personal injuries and economic loss including, but not limited to, monthly rental payments, medical expenses, moving expenses, personal property loss, professional cleaning expenses, contamination of furniture, clothing, mattresses, bedding, appliances, bedding, toys, and other belongings, as well as attorneys' fees and costs in the sum to be proven at trial.

103.   Plaintiffs are entitled to recover their attorneys' fees under the subject lease agreement entered into between the parties.   Plaintiffs have hired a law office to prosecute their claims and are entitled to their attorneys' fees and costs after trial in this matter.

## VII.

## SEVENTH CAUSE OF ACTION

### Breach of The Implied Warranty of Habitability

### (By All Plaintiffs Against Defendants and DOES 1-30)

104.   Plaintiffs incorporate herein by reference each and every previous and subsequent allegations as though fully set forth herein.

105.   Plaintiffs are informed and believe, and thereon allege, that at all relevant times and/or portions thereof, Defendants and Does 1-30 were owners, landlords, and/or lessors of the Subject Property and or authorized agents of the owners, landlords, and/or lessors of the Subject Property and responsible for the proper management, maintain and/or repair of the Subject Property.

106.   At all times mentioned in this complaint, Defendants and Does 1-30 were engaged in the business of owning, leasing, renting, operating, providing, supervising, maintaining, managing, constructing, inspecting, and/or repairing the Subject Property before, during and after Plaintiffs' tenancy.

107.   On or about July 17, 2018, Plaintiffs entered into a written rental agreement with Defendants.   Under the terms of the rental agreement, Plaintiffs paid rent, a security deposit, and other fees and costs.  A copy of the rental agreement between Plaintiffs and Defendants is attached as Exhibit 1 hereto.

108.   The rental agreement expressly acknowledges that the residential use of the Subject Property was for Plaintiffs identified herein.

109.   Defendants and Does 1-30 impliedly warranted to Plaintiffs that the premises were habitable.

110.   In accordance with the rental agreement, Plaintiffs entered into possession

of the Subject Property after signing the written rental agreement referred to herein and continued to occupy the Subject Property until in or around April 2020, when Plaintiffs were forced to vacate the residence after discovering it was substandard, suffered from water and moisture intrusion, excess humidity, and microbial contamination, as alleged herein.

111.   During Plaintiffs' tenancy of the Subject Property, the Subject Property was unfit for human occupation, untenantable, and substandard in that it substantially failed to comply with applicable building and housing code standards that materially affect the tenant's health and safety, as alleged herein, which is and was a result of a combination of known defective design and construction of the subject property and improper and substandard repair and maintenance, incomplete and improper investigation into defective and deteriorated building components and improper attempts to repair the Subject Property by Defendants and Does 1-30, all of which caused and contributed to indoor air contamination, including microbial contamination and exposure, which in turn has caused serious personal injury to Plaintiffs as more specifically alleged in this Complaint.

112.   At the time Plaintiffs took possession, but unbeknownst to Plaintiffs, the Subject Property was uninhabitable and unfit for human occupation due to the design and construction defects and deficiencies; and failing building components and systems, and improper and negligent, careless and reckless maintenance and repair, all contributing to water and moisture intrusion, causing microbial/mycological contamination and infestation of the subject property, rendering it unsafe for habitation and causing severe chronic health problems to Plaintiffs. All such defects were not properly repaired and maintained by Defendants and Does 1-30.

113.   Plaintiffs, at all times, remained unaware of any injury or causation to their continuing chronic health problems until approximately in or around late July- August 2018.

114.   Plaintiffs notified Defendants numerous times of the uninhabitable,

defective and unacceptable conditions of disrepair described in this Complaint and requested that Defendants have them repaired, but Defendants and Does 1-30 failed to investigate and/or correct, repair and/or remediate the conditions in a timely and proper manner, or at all.

115.   Plaintiffs timely paid Defendants and Does 1-30 the agreed upon rent in the amount to be proven at trial.  Plaintiffs performed all promises, obligations and/or duties under the rental agreement.

116.   The Subject Property as it existed in its defective, uninhabitable, untenantable and unhealthy condition, had no rental value whatsoever as it was the source of Plaintiffs' health problems and was defective and in an uninhabitable condition.

117.   As a proximate result of Defendants and Does 1-30's breach of his/her/its implied warranty of inhabitability and his/her/its failure to properly maintain, investigate, and repair the defective and uninhabitable conditions or to have them repaired within a reasonable time, or at all, Plaintiffs sustained damage and serious personal injuries and resulting chronic health problems and general damages in the amount in excess of this Court's minimal jurisdictional limits to be proven at trial.

118.   As a further proximate result of Defendants and Does 1-30's breach of his/her/its implied warranty of habitability and his/her/its failure to properly maintain the Subject Property and/or repair the defective and dangerous conditions or to have them repaired within a reasonable time or at all, Plaintiffs suffered property damages and personal injuries and economic loss including, but not limited to, damage to and/or complete loss of their respective household items, including but not limited to, furniture, clothing, bedding, and other belongings; as well as moving expenses, lost rental payments, cleaning expenses, and loss of income, as well as other consequential and incidental damages  in the sum to be proven at trial.

119.   As a proximate result of Defendants breach of the implied warranty of habitability, Plaintiffs were seriously injured in their health, strength and activity,

sustaining injury to their bodies as alleged herein, all of which injuries have caused and continue to cause Plaintiffs great physical pain and suffering, mental stress, anxiety and worry.  All of these injuries have caused serious health problems and damages in an amount to be proven at trial.

120.   Plaintiffs are entitled to recover their attorneys' fees under the subject rental agreement entered into between the parties.  Plaintiffs have hired a law office to prosecute their claims and are entitled to their attorneys' fees and costs after trial in this matter.

## VIII.

## EIGHTH CAUSE OF ACTION

## Breach of Implied Covenant of Quiet Use and Enjoyment

## (By All Plaintiffs Against Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT, and Does 1-10 and DOES 1-30)

121. Plaintiffs incorporate herein by reference each and every previous and subsequent allegations as though fully set forth herein.

122. Implied in the subject rental agreement was an implied covenant of quiet enjoyment by which Defendants, as landlord, impliedly promised Plaintiffs, as tenants, possession during the contract term and to not, through acts or omissions, create conditions which would disturb the Plaintiffs' possession and beneficial use and enjoyment of the premises for the purposes contemplated by the rental agreement, such as allowing Plaintiffs to use the home as a residence.

123. Plaintiffs are informed and believe that Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT breached the implied covenant for the above described reasons by failing to supply Plaintiffs with an appropriately safe and secure living environment and a residence which was habitable. Defendants' SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT breach of the implied covenant of quiet enjoyment worsened over time as Defendants SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT engaged in improper acts and omissions,

including failing to remedy the subject conditions and failing to provide Plaintiffs with a habitable alternative residence with which they could enjoy the use of their residence for its intended purpose.

124. As a proximate and legal result of Defendants' SD FAMILY HOUSING, LINCOLN PROPERTY MANAGEMENT acts and omissions in breaching the implied covenant of quiet enjoyment, Plaintiffs have suffered damages in excess of the jurisdictional minimum as alleged herein.

125. Plaintiffs are entitled to recover their attorneys' fees under the subject rental agreement entered into between the parties.  Plaintiffs have hired a law office to prosecute their claims and are entitled to their attorneys' fees and costs after trial in this matter.

## IX.

## NINTH CAUSE OF ACTION

### Rent Abatement

### (By All Plaintiffs Against Defendants and DOES 1-10)

126.  Plaintiffs incorporate herein by reference each and every previous and subsequent allegations as though fully set forth herein.

127.  Defendants and Does 1-10 leased to Plaintiffs by written rental agreement, the residential, single family Subject Property.  This lease was for residential use.  In so leasing the Subject Property to Plaintiffs, Defendants and Does 1-10 impliedly warranted that the premises was habitable and fit for residential use.

128.  Plaintiffs took possession of the premises and faithfully and promptly paid their rent and performed all other obligations imposed on them by the above mentioned rental agreement, except during months when nonpayment of rent which was excused by Defendants' and Does 1-10's breaches of the warranty of habitability alleged herein.

129.  At the time the rental agreement was entered into, and throughout the time Plaintiffs occupied the Subject Property, Defendants and Does 1-10 knowingly caused and permitted substandard building, design, construction, maintenance, and repairs, as

well hazardous and unhealthy conditions, including microbial/mycological contamination in the Subject Property's living areas; as alleged herein, to exist within and about the Subject Property.

130.  Defendants and Does 1-10, at all times mentioned in this Complaint, knew that the above conditions existed in violation of numerous provisions of State and Local Housing Codes including but not limited to the provisions of Civil Code Section 1941 et seq. and California State Building Standard Codes, and UBC Standards.

131.  Despite this knowledge and despite Plaintiffs' request that the conditions be remedied and repaired, Defendants and Does 1-10 failed and refused to do so, all in violation of Civil Code Sections 1941 and 1941.1 et seq.

132.  Because of the above stated conditions, the Subject Property leased by Plaintiffs was unsafe, unhealthy, substandard, untenantable and substantially uninhabitable.  In causing and permitting and in failing to and refusing to repair the above stated conditions, Defendants and Does 1-10 breached the warranty of habitability owed to Plaintiffs.  By virtue of this breach of warranty and as a result of the uninhabitable condition of the Subject Property, the fair rental value of the residence at all times mentioned in this Complaint was $0.00 per month.

133.  In or around April 2020, because of the continued existence of these conditions, Plaintiffs were unable to remain in the Subject Property and were forced to vacate and did vacate the Subject Property.

134.  Plaintiffs were completely unable to use the Subject Property due to its uninhabitability as a result of the conditions alleged herein.

135.   During the occupancy, Plaintiffs paid a total rent in the sum to be proven at trial on a per month basis whereas the total fair rental value of the premises during this period was no more than $0.00, and therefore, Plaintiffs has been damaged in the sum to be proven at trial.

///

///

# X.

## TENTH CAUSE OF ACTION

### Negligence Against Contractor Working on the Premises

### (By All Plaintiffs Against Defendants STANLEY STEEMER, APEX, 3D ENVIRONMENTAL, and DOES 11-15 and 36-50)

136.   Plaintiffs incorporate herein by reference each and every previous and subsequent allegations as though fully set forth herein.

137.   Defendants STANLEY STEEMER, APEX, 3D ENVIRONMENTAL, and Does 11-15 and 36-50 were contractors, subcontractors, designers, architects, engineers, remediation professionals, environmental investigation specialists, public and/or government agencies, and/or other person(s) and/or entity(ies), or acting as agents, servants, and/or employees of their co-defendants, who performed construction, remediation, restoration, demolition, removal, work, and/or services to inspect, investigate, test, repair, remediate, demolish, improve, and/or maintain the Subject Property and Defendants were acting within the course and scope of their agency, service, and employment in doing the things herein alleged on behalf of such co-defendants, including but not limited to the co-Defendants named in this Complaint.

138.   Plaintiffs are informed and believe, and thereon allege, that prior to the time Plaintiffs took possession of the Subject Property under the rental agreement, and during the time Plaintiffs resided at the Subject Property, Defendants STANLEY STEEMER, APEX, 3D ENVIRONMENTAL, and Doe Defendants 11-15 and 36-50, and each of them, improved, investigated, inspected, tested, repaired, removed, demolished, maintained and/or attempted repairs, maintenance, or improvements to the Subject Property and its building components, including, but not limited to, ceilings, walls, plumbing, water lines, fixtures, carpet/flooring, and other areas of the Subject Property and negligently failed to properly complete their work and/or repair, test, evaluate, correct, remediate, reinstall, repair, remove, demolish, clean, decontaminate, and warn the Plaintiffs as tenants and occupants of the unsafe areas of the Subject

Gomez Trial Attorneys

PLAINTIFFS' FIRST AMENDED COMPLAINT

3:20-c-v-01794-LAB-DEB

Property, as alleged herein.

139.    At all the aforementioned times and places, Plaintiffs were tenants who were owed a duty of care pursuant to Civil Code §1714 to not be harmed or damaged as a result of Defendants acts, omissions, and negligence.

140.    At the aforementioned times and places, Defendants, and each of them, failed to properly complete their work, performed improper repairs, and otherwise allowed hidden dangers of harmful and/or hazardous substances, including but not limited to microbial contamination, and failed to properly and timely fully investigate, maintain, repair, remediate, clean, decontaminate, remove, and ultimately repair the Subject Property and make it safe for habitation.  As a proximate result of such negligence of Defendants, and each of them, Plaintiffs are injured and have suffered personal injuries and property and other economic and non-economic damages as alleged herein in an amount to be proven at the time of trial.

## PRAYER

WHEREFORE, Plaintiffs request judgment against defendants, and each of them, for the following:

1.    For general damages in excess of this Court's minimum jurisdiction, according to proof;

2.    Actual damages and attorneys' fees and costs pursuant to Civ. Code § 1942.4;

3.    For special damages according to proof;

4.    For prejudgment interest as provided by law;

5.    For costs of suit incurred herein;

6.    For attorneys' fees pursuant to the rental agreement;

7.    For investigation costs, including *Stearman* damages;

8.    For punitive and exemplary damages pursuant to Civil Code § 3294 and as allowed by law, according to proof at trial;

9.      For any other and further relief the court considers just and proper.

DATED:  January 21, 2021                    Respectfully submitted,

**GOMEZ TRIAL ATTORNEYS**


By: */s/ Jessica T. Sizemore, Esq.*
        John H. Gomez, Esq.
        Jessica T. Sizemore, Esq. -
        Kayla Lynk, Esq.


**GREEN BRYANT & FRENCH, LLP**

Matthew T. Poelstra, Esq.

***Attorneys for Plaintiffs***

PLAINTIFFS' FIRST AMENDED COMPLAINT